UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JENNIFER WILLIAMS

                              Plaintiff,

        v.                                                          **DECISION AND ORDER**
                                                                    14-CV-921S
CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.

_____

        1.      Plaintiff Jennifer Williams challenges an Administrative Law Judge's

("ALJ") determination that she is not disabled within the meaning of the Social Security

Act ("the Act").   On June 15, 2011, Plaintiff protectively filed applications for

Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB), alleging

disability beginning May 30, 2009, due to mitral valve prolapse, anxiety, depression,

diabetes, and panic attacks.   Both applications were initially denied.   Pursuant to

Plaintiff's request, an administrative hearing was held before ALJ Donald T. McDougall

on January 28, 2013.   Plaintiff, who is represented by counsel, and a vocational expert

appeared and testified.   On March 19, 2013, the ALJ issued a decision denying the

claims.   On September 3, 2014, the Appeals Council denied Plaintiff's request for

review.[1]   Plaintiff filed the current action on October 31, 2014, challenging the

Commissioner's final decision.

        2.      On April 14, 2015, Plaintiff filed a motion for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 8).   On

---

[1] The ALJ's March 19, 2013 decision became the Commissioner's final decision in this case when the
Appeals Council denied Plaintiff's request for review.

September 5, 2015, the Commissioner filed a Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief. (Docket No. 18).  Plaintiff filed a reply on September 25, 2015 (Docket No. 20), at which time this Court took the matter under advisement without oral argument.  For the following reasons, Defendant's motion is granted and Plaintiff's motion is denied.

3.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

4.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may

support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

5.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

6.     This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 404.1520; 416.920.

7.      Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

8.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since May 30, 2009, her alleged onset date, although the record indicates that she received unemployment benefits in 2010 and 2011 (R. 15; 142)[2]; (2) Plaintiff's recurrent chest discomfort atypical for angina, exertional dyspnea, non-insulin dependent diabetes mellitus, depression, anxiety, and panic attacks without agoraphobia were "severe" impairments within the meaning of the Act (R. 16); (3) Plaintiff's impairments do not meet or equal the criteria necessary for finding a disabling impairment under the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, with special consideration given to Listings 4.00 (cardiovascular system), 9.08 (diabetes mellitus), 12.04 (affective disorders), and 12.06 (anxiety-related disorders) (R. 16); (4) Plaintiff has the residual functional capacity ("RFC") to perform light work, except that she

---

[2] Citations to the administrative record are designated as "R."

should avoid extreme exposure to fumes, dusts, gases, or other respiratory irritants as well as to temperature extremes; she can have no more than occasional contact with the general public, peers, or supervisors; and she should avoid exposure to loud noises and close concentration or attention to detail for extended periods (R. 18); therefore, she is unable to perform her past relevant work as a cashier (R. 25); and (5) Plaintiff could perform other jobs that exist in the national economy, including as a mail clerk, office helper, assembler, and addresser.   (R. 26).   Thus, Plaintiff was not under a disability, as defined by the Act, at any time from the date of her application through March 19, 2013, the date of the ALJ's decision.   (Id.).   Plaintiff challenges the ALJ's determination that she is not disabled and asserts that remand is necessary.

9.      Plaintiff first argues that remand is warranted because the ALJ erred by not obtaining a treating source statement about Plaintiff's functional capacity and by relying on the lack of functional limitations in the record to support the RFC.   Generally, the Commissioner has "an affirmative duty to request RFC assessments from plaintiff's treating sources despite what is otherwise a complete medical history."   Graham v. Colvin, No. 13-CV-728S, 2014 WL 3572422, at *4 (W.D.N.Y. July 21, 2014) (quoting Johnson v. Astrue, 811 F.Supp.2d 618, 630 (E.D.N.Y. 2011) (internal citations and quotation marks omitted)).   As this Court has stated, however, "it is not per se error for an ALJ to make the RFC determination absent a medical opinion ..., [and] remand is not necessary where 'the record contains sufficient evidence from which an ALJ can assess the [Plaintiff]'s residual functional capacity.'"   Lewis v. Colvin, No. 13–CV–1072S, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014) (quoting Tankisi v. Comm'r of Social Security, 521 F.App'x. 29, 34 (2d Cir. 2013)); Atchley v. Colvin, No. 13-CV-937S, 2014

WL 5465459, at *4 (W.D.N.Y. Oct. 28, 2014) ("The relevant inquiry is as follows: absent the information the claimant contends the ALJ should have attempted to obtain, is the medical record sufficient to support the ALJ's RFC assessment?") (citing Tankisi).   In addition, the "regulatory language provides ample flexibility for the ALJ to consider a broad array of evidence as 'medical opinions.'" Sickles v. Colvin, No. 12–CV–774 MAD/CFH, 2014 WL 795978, at *4 (N.D.N.Y. Feb. 27, 2014), citing 20 C.F.R. § 404.1527 ("'statements ... that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [] symptoms, diagnosis and prognosis,' claimant's capabilities, and any physical or mental restrictions").   Similarly, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." Walker v. Astrue, No. 08–CV–0828(A)(M), 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) (quoting Manso–Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996), report and recommendation adopted, No. 08–CV–828A, 2010 WL 2629821 (W.D.N.Y. June 28, 2010).

10.   Plaintiff asserts that the only treating source opinion available is too vague to constitute substantial evidence.   The Court finds no cause for remand on this basis. In connection with Plaintiff's disability applications, the New York State Office of Temporary and Disability Assistance, Division of Disability Determinations requested an RFC assessment from Plaintiff's cardiologist, Dr. Michael Merhige.   (R. 290).   Rather than completing the lengthy questionnaire, on July 21, 2011, Dr. Merhige simply noted "see attached records," "see attached reports," and "pt can do 4.6 METs of workload." (R. 290, 292, 293).   The referenced records contain the results of Plaintiff's May 24,

2011 nuclear stress test and June 29, 2011 stress echocardiogram, which Dr. Merhige ordered to assess Plaintiff's mitral valve prolapse, palpitations, and chest pain.  (R. 295-296, 297-298).  Plaintiff notes "Dr. Merhige did offer some sort of an opinion, it was just not an opinion that can be translated by an ALJ into a functional capacity."  Indeed, "pt. can do 4.6 METs of workload" is not helpful to a lay examiner; however, the ALJ did not rely solely on the "4.6 METs" statement.  Although here, the ALJ gave the greatest weight to the consultative examiner(s), he neither ignored Dr. Merhige's opinions nor improperly discounted favorable evidence contained within the treatment notes.  The ALJ discussed all of the attached reports and Dr. Merhige's subsequent treatment notes, which contained substantial evidence to support a conclusion that Dr. Merhige did not find disabling functional limitations.  (R. 20-22).

Dr. Merhige's impressions from the May 2011 stress test noted Plaintiff's diagnosis of mitral valve prolapse and that the "[o]nly related symptoms are exertional dyspnea," which he questioned as being "related to physical deconditioning and overweight."  (R. 20, citing 296).  The doctor also noted that Plaintiff had heart palpitations that were "short lived and post exercise and most likely not related to any significant arrhythmia."  (Id.).  On September 13, 2011, Dr. Merhige reviewed a second stress test performed on September 8-9, 2011, and found that after exercising to 9.5 METs, Plaintiff exhibited exertional dyspnea, but no chest discomfort during the test, and no angina discomfort since her last visit.  (R. 21, citing 346-347).  Dr. Merhige advised optimal medical therapy, and gave Plaintiff a prescription for nitroglycerin with instructions on how to manage her intermittent chest pain.  (Id.).  At the hearing, Plaintiff testified that nitroglycerin was effective. (R. 19, citing 42).

With respect to Plaintiff's physical impairments, the ALJ gave "the greatest weight" to the opinion of consultative examiner Dr. Donna Miller, (R. 24)[3], whose findings were consistent with Dr. Merhige's findings.  Dr. Miller's physical examination findings were within normal limits, with the exception of a reduced squat test, and she gave Plaintiff a prognosis of stable.  (R. 21, citing 354-355).  Significantly, Dr. Miller assessed physical limitations solely related to Plaintiff's asthma.  (R. 21).    It is well settled that an ALJ is entitled to rely upon the opinions of the State Agency's medical and psychological consultants, since they are qualified experts in the field of Social Security disability.  See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), 416.927(f)(2).    Moreover, the opinions of consultative physicians can constitute substantial evidence where, as here, their opinions are consistent with the other evidence in the record.  See Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995); see also Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983).

Records from Plaintiff's diabetes check-ups with Dr. Korlepara's staff also indicate no significant physical restrictions; in fact, on certain occasions, she was noted to be "feeling well" and with no physical or cardiac complaints.  (R. 20-22, citing 250-251, 412, 420, 424).  Accordingly, other medical opinions and the supporting records – "without regard to Dr. [Merhige]'s opinion—provide more than a mere scintilla of evidence to sustain" the ALJ's RFC determination.  Davis v. Massanari, No. 00 CIV. 4330 (SHS), 2001 WL 1524495, at *8 (S.D.N.Y. Nov. 29, 2001) (finding physician's opinion, standing alone, to be "so vague as to render it useless," but the "facts

---

[3] "As for the opinion evidence, the greatest weight in this case is given to the opinion of the consultative examiners (R. 348-351, 352-355) and the review psychologist (R. 357-371, 372-375), given their consistency with the objective record, programmatic experience, and the lack of significant clinical and laboratory abnormalities one would expect if the claimant were, in fact, disabled." R. 24-25.

underlying the opinion and other medical opinions . . . lend it a more concrete meaning"); see Diakogiannis v. Astrue, 975 F.Supp.2d 299, 317–18 (W.D.N.Y. 2013) (finding ALJ's failure to request functional assessment from treating physician did "not necessarily mandate remand" where the record "was sufficient to support the ALJ's RFC assessment") (citing Tankisi v. Comm'r of Soc. Sec., 521 F.App'x 29, 33–34 (2d Cir. 2013)).

11.     Additionally, it appears from the Court's review of the record that the May 2011 stress test was Plaintiff's first visit with Dr. Merhige, despite having been initially referred to him in 2009 after he was consulted in connection with Plaintiff's emergency room visit for heart palpitations.  (R. 335).  Together with the related findings, this delay in seeking treatment casts doubt on the alleged severity of Plaintiff's cardiac symptoms during the relevant time period.   See SSR 96-7p ("longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms . . . lends support to an individual's allegations of intense and persistent pain or other symptoms"); compare Shaw v. Chater, 221 F.3d 126, 133 (2d Cir. 2000) ("While it is conceivable that a three-year gap in plaintiff's medical treatment might be part of a more extensive inquiry into whether he was in fact disabled, the fact of this time lapse does not negate the *compelling* evidence in the record as a whole that plaintiff was *completely disabled*.") (emphasis added).

12.     Further, Plaintiff asserts that, with respect to Dr. Merhige's opinion, the ALJ identified a gap in the record and relied on it to Plaintiff's detriment.  This argument is likewise unavailing.  The ALJ stated that "given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment record of

restrictions placed on the claimant by the treating doctor.  Yet, a review of the record in this case reveals no restrictions recommended by treating doctors." (R. 24).  It is plain from the ALJ's determination that this statement related to whether Plaintiff's contentions of disability were supported by the entire record; the ALJ was not suggesting that Dr. Merhige's opinion, or the medical evidence, was incomplete.  (Id.).  Accordingly, contrary to Plaintiff's contention, the ALJ did not identify a "gap," as that term is understood in the cases, on which he relied to Plaintiff's detriment.  Compare, e.g., Hooker v. Colvin, No. 13-CV-81-JTC, 2014 WL 1976958, at *7 (W.D.N.Y. May 15, 2014) (remanding for ALJ's failure to adhere to his duty to develop the record where ALJ requested information from treating psychiatric institute for the wrong time period and then acknowledged and relied on the absence of a treating source statement regarding Plaintiff's limitations).

13.     It is well-established that an ALJ "is entitled to rely not only on what the record says, but also on what it does not say."  Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983).  Here, the ALJ's decision reflected "a complete and detailed recitation of the medical records and reports [but] absent from the record is any indication of the severity" of Plaintiff's alleged limitations.  Id. (citing Rutherford, 685 F.2d at 63).  Nonetheless, Plaintiff maintains that "a treating source's choice to not include specific functional limitations (for an individual who is not working) should not be held against the individual seeking benefits."

The absence of functional limitations related to Plaintiff's cardiac conditions – the limitations to which Dr. Merhige could reasonably deliver a controlling opinion – is telling.  For example, on December 15, 2011, despite Plaintiff's recent emergency room

visit for chest discomfort, Dr. Merhige found that Plaintiff was "walking ad lib without exertional dyspnea," "is not having exertional chest discomfort," and "has had no syncope, lightheadedness, or palpitations."  (R. 21, citing 431).  His impression again included that Plaintiff's exertional dyspnea was likely related to being overweight, physical deconditioning, and COPD, while also noting that she continued to smoke.  (R. 21, citing 432).  A review of the medical record does not reveal additional evidence in support of Plaintiff's burden or that undermines the ALJ's conclusions.  Accordingly, the ALJ properly relied on the absence of disabling limitations in the record.

14.   Plaintiff argues that remand is warranted because the ALJ's credibility analysis was based on a "gross mischaracterization of the contents of the record." Richardson v Barnhart, 443 F. Supp.2d 411, 421 (W.D.N.Y. 2006) (finding ALJ's statement that treating physician "provided no objective medical evidence to support her statement of disability" was inapposite to record that "contained a great deal of objective medical evidence").  Certainly, an ALJ "cannot pick and choose only that portion of the evidence that supports his conclusions."  Kuleszo v. Barnhart, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002).   Nevertheless, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant."  Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983).

In making a credibility determination, the ALJ will consider, in addition to a claimant's subjective medical history, several other factors, such as (i) plaintiff's daily activities; (ii) location, duration, frequency, and intensity of pain and symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness and side effects of

any medications taken to alleviate the pain and symptoms; (v) treatment other than medication; (vi) any measures used to relieve the pain or other symptoms; and (vii) other factors concerning functional limitations and restrictions due to pain and symptoms. 20 C.F.R. § 404.1529(c)(3).  "Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are 'sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination.'"  Wischoff v. Astrue, No. 08–CV–6367, 2010 WL 1543849, at *7 (W.D.N.Y. Apr. 16, 2010) (quoting Delk v. Astrue, No. 07–CV–167–JTC, 2009 WL 656319, at *4 (W.D.N.Y. Mar. 11, 2009)).

15.    Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  (R. 24).  The ALJ thoroughly reviewed the record and properly considered, *inter alia*, that Plaintiff cared for her children, found relief from her medication, and was encouraged by her therapist to seek out employment or volunteer opportunities.  (Id.).  Contrary to Plaintiff's contentions, the ALJ did not rely on any single factor to demonstrate Plaintiff's ability to work, nor did his analysis end with these three; throughout his decision, ALJ also considered a range of evidence, applied the relevant regulatory factors, and explained his decision with sufficient specificity to permit meaningful judicial review.

16.    First, the ALJ discussed Plaintiff's testimony about the limiting effects of her mitral valve prolapse, diabetes, anxiety, depression, and panic attacks, including that she became winded from climbing two or more flights of stairs; that she grew

anxious from worrying, standing in long lines, being in a large store with many people, thinking about her mother's death, walking alone, driving, and waiting for appointments. (R. 19).  The ALJ noted Plaintiff's testimony that her anxiety and depression made it difficult for her to work around people because it makes her heart pound, she gets shaky, and she feels like she will pass out.  (Id.).  The ALJ also noted that Plaintiff testified that she had panic attacks twice a week that lasted about three minutes, but that she was able to calm herself down and found that her medications and psychiatric treatment were helpful.  (Id.).  The ALJ then considered Plaintiff's testimony about her physical symptoms, including that she gets chest pain three times a week, brought on by stress and heavy lifting.  Plaintiff testified that she takes nitroglycerin, which always improves her symptoms; the ALJ further noted that Plaintiff later testified she takes nitroglycerin only twice per month.  (Id.).  The ALJ considered Plaintiff's allegation that she went to an emergency room three times in the prior year because of chest and left arm pain, but she was told the cause was anxiety.  (Id.).  The ALJ also noted that Plaintiff uses albuterol for shortness of breath, but continues to smoke.  (Id.).

17.   In addition to Plaintiff's testimony about her symptoms, the ALJ considered her daily activities, concluding that Plaintiff described daily activities, "although inconsistently, that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  (Id.).  As Plaintiff indicates, the ALJ did note that she "is apparently able to care for her children at home, which can be quite demanding both physical [sic] and emotionally, without any particular assistance."  (R. 24).  Plaintiff asserts that the ALJ mischaracterized the evidence related to her ability to care for her children because she also reported significant difficulty with her duties to

her family.  (R. 304, 341, 445).  Thus, Plaintiff maintains her ability to fulfill some family responsibilities should not be used against her.  See Nelson v. Bowen, 882 F.2d 45, 49 (2d Cir. 1989) ("When a disabled person gamely chooses to endure pain in order to pursue important goals, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working.").

Indeed, "a claimant need not be an invalid to be found disabled," Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998); nonetheless, an ALJ must still consider a claimant's daily activities in assessing the credibility of her statements.  20 C.F.R. §§ 404.1529(3)(i); 416.929(3)(i).  The ALJ neither relied solely on this factor nor overlooked Plaintiff allegations; in fact, he noted that Plaintiff reported to her treating physician "that she had days where she felt overwhelmed with her work and children."  (R. 24, citing 304).  The ALJ also considered Plaintiff's testimony about her daily activities, which included getting her children ready for school, walking them to the bus stop, doing light housecleaning with short breaks and some help from her oldest child.  (R. 17).  Plaintiff also reported preparing meals daily and helping her children with their homework.  (R. 16-17, citing 162, 163).  Given, as Plaintiff asserts, that her reported daily activities standing alone do not equate to the demands full-time employment, the Court finds the ALJ properly considered them in light of the record as a whole.

18.  Likewise, Plaintiff alleges that the ALJ mischaracterized the evidence related to Plaintiff's medications and improperly found that they were effective enough to allow her to work, despite the medical record demonstrating her symptoms were not always controlled and that her medications were adjusted multiple times.  This argument again fails.  The ALJ found:

"Although the claimant has received treatment for her allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature.  Her use of medications does not suggest the presence of an impairment that is more limiting than found in this decision. The medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms.  Her complaints to treating physicians, discussed in detail above are inconsistent with those to which she testified."  (R. 24).

Throughout the decision, the ALJ referred to various statements by Plaintiff that her medications helped her conditions.  Among other references to the record, the ALJ noted Plaintiff's testimony that Celexa, Klonopin, and Lamictil help a little with her anxiety and depression (R. 19; 38-39), that her mental health has improved since she began psychiatric treatment (R. 19; 41), and that she takes nitroglycerin for chest pain, which always improves her symptoms (R. 19; 42).   The ALJ also considered that despite some blood sugar fluctuations, Plaintiff stated she was doing well with her diabetes (R. 20, citing 256); she did not use Albuterol often for her reactive airway disease (R. 20, citing 304); and she reported anxiety with excessive worrying, but that BuSpar helped (R. 24, citing 462).  In addition, the ALJ acknowledged adjustments to Plaintiff's medication and her ongoing complaints of cardiac, diabetic, and mental health symptoms.  (See R. 21, citing 346-347, 431-432; R. 22, citing 420, 424-425, 439-440). Contrary to Plaintiff's contention, a review of the record does not undermine the ALJ's conclusions; instead, the record demonstrates some conflicting evidence, which the ALJ reconciled in accordance with his duty.

19.     The ALJ also considered that Plaintiff's therapist "suggested that she get out of the house more often, work, volunteer, or visit with family and friends."  (R. 24; R. 23, citing 444).   Similarly, Plaintiff asserts that nothing in the record indicates that Plaintiff's therapist intended the statement to mean that Plaintiff could work for forty

hours a week in a competitive work environment.  The Court notes, conversely, nothing in the record indicates that Plaintiff's therapist qualified the statement or indicated that Plaintiff was *unable* to work, and the ALJ, again, did not place unreasonable weight on this factor.   In fact, treatment notes show that Plaintiff's therapist advised her to structure her day, do more activities, establish boundaries with her family members, take control of her anxiety, and did not advise her to limit her activities.  (See, e.g., R. 444-446, 447-448, 461, 464).

20.   In addition to the above factors, the ALJ discussed inconsistencies that reflected negatively on the credibility of Plaintiff's allegations.  (R. 24).  For example, the record demonstrates Plaintiff received unemployment benefits in 2010 and 2011.  (R. 15, citing 142).   The ALJ properly noted that Plaintiff would have been required to "certify to the State authorities that she was ready, willing, and able to work . . . while simultaneously alleging inability to work for federal social security benefit purposes." (Id.); Felix v. Astrue, No. 11-CV-3697 KAM, 2012 WL 3043203, at *10 (E.D.N.Y. July 24, 2012) ("Courts in the Second Circuit have held that an ALJ may consider evidence that the claimant received unemployment benefits … during the time period for which he claims disability benefits as adverse factors in the ALJ's credibility determination.").   The ALJ was entitled to consider that this inconsistency "casts some doubt on the credibility of her assertions of disabling symptoms and inability to work at any time since May 30, 2009."  (R. 15); Kolenko-Gerbec v. Colvin, No. 13-CV-430S, 2014 WL 4627220, at *4 (W.D.N.Y. Sept. 15, 2014) ("ALJ's limited reference to Plaintiff's unemployment benefits was for just this proper purpose.").   The ALJ also noted that Plaintiff "testified that she stopped working in late May 2009, but told Dr. Korlepara on July 14, 2011, that she had

days where she felt overwhelmed with her work and children." (R. 24, citing 304). The Court notes this treatment record also contains advice to obtain "counseling and maybe some time off work" (R. 304); however, to the ALJ's point, the medical visit occurred during the time period at issue, when Plaintiff was allegedly disabled and not working. See Rokitka v. Astrue, No. 11-CV-614S, 2012 WL 2405197, at *5 (W.D.N.Y. June 25, 2012) ("ALJ identified a series of inconsistencies on which he was entitled to rely and find Plaintiff's statements not credible") (citing 20 C.F.R. § 404.1529(c)(4)).

21.      Having reviewed the ALJ's decision and the record, the Court finds that the ALJ properly considered the entire record, and the summary of the evidence is free of "gross mischaracterizations" and was performed in accordance with the relevant legal standards. Thus, the ALJ fulfilled his duty to weigh "all of the relevant medical and other evidence" and drew a reasonable conclusion that these factors supported a finding that Plaintiff is not disabled. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Where, as here, the ALJ's findings "are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review." Pardee v. Astrue, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)); Carroll, 705 F.2d at 642.[4]

22.      For the foregoing reasons, and upon a review of the record as a whole, this Court concludes that the ALJ's determination is supported by substantial evidence.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED;

---

[4] Plaintiff made an additional argument that the ALJ failed to include in the RFC Plaintiff's moderate limitations in maintaining a regular schedule and dealing with stress, as assessed by the consultative psychiatric examiner; however, this argument was withdrawn in the Reply. (Docket No. 20)

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 18) is GRANTED;

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.


Dated: May 10, 2016
        Buffalo, New York


                                         /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                    United States District Judge